# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 25, 2014

## STATE OF TENNESSEE v. JESSICA ROOT

**Appeal from the Criminal Court for Sevier County**
**No. 17449-III      Rex Henry Ogle, Judge**

---

**No. E2013-01690-CCA-R3-CD - Filed April 22, 2014**

---

The Defendant, Jessica Root, appeals the trial court's nine-year sentence to her open plea of guilt to vehicular homicide by intoxication, contending (1) that the trial court failed to consider applicable mitigating factors and a sentencing practices report; (2) that she should have received the minimum sentence; and (3) that the trial court improperly denied all forms of alternative sentencing.  Upon consideration of the record and the applicable authorities, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Edward C. Miller, District Public Defender, for the appellant, Jessica Root.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; James B. Dunn, District Attorney General; and Greg Eshbaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

This case arises out of the September 16, 2010 death of John R. Whitt, III, the Defendant's then-husband, which occurred while he was a passenger in the Defendant's car. The record reflects that the Defendant was indicted for the following offenses following Mr. Whitt's death:  Count 1, vehicular homicide by intoxication, a Class B felony; Count 2, vehicular homicide by recklessness, a Class C felony; Count 3, driving under the influence of an intoxicant (DUI), a Class A misdemeanor; and Count 4, DUI with a blood alcohol content (BAC) of .12, a Class A misdemeanor.  The Defendant entered an open guilty plea

to vehicular homicide by intoxication, Count 1, on June 17, 2013, and the remaining counts were dismissed. The State offered the following factual basis in support of the plea:

> [O]n the 16th day of September of 2010, [the Defendant] was driving a 2008 Mitsubishi Eclipse eastbound on US-25, also known as Asheville Highway. . . . Your Honor, John Whitt, her husband was an unrestrained front passenger in that vehicle. That [the Defendant] lost control of that vehicle and crossed the westbound lane of US-25 and went off the north edge of the roadway, traveled approximately fifty-six feet in a ditch line until it went through a barbed wire fence and impacted a tree on the passenger side. Mr. Whitt was sitting on that passenger's side, Your Honor, and died basically immediately of the injuries sustained in that crash. [The Defendant] was then transported to the Tennessee Medical Center for non-life-threatening injuries. Sergeant Fox calculated an estimated speed on the roadway, Your Honor, of eighty miles an hour for that vehicle. A blood sample was taken from [the Defendant] at the Tennessee Medical Center and sent to the T[ennessee] B[ureau] of I[nvestigation]. That was submitted to an analysis, Your Honor, which did find a BAC of .12 percent, all of which occurred in Sevier County.

A sentencing hearing was held on July 22, 2013, and the following exhibits were presented: an accident reconstruction report, the presentence investigation report, the Defendant's and the victim's toxicology reports, the Defendant's driving history, and a report on the sentencing practices in Tennessee. The State did not present any witnesses.

The Defendant testified on her own behalf. During her testimony, she stated that she and the victim had been together for three years, that they had been married for seven and a half months, and that they both had children from outside the marriage. She testified that she had struggled with depression most of her life and that she had used alcohol to self-medicate. The Defendant admitted that she had a previous conviction for DUI in 1997 and that alcohol had affected both her health and her ability to drive her children places. Regarding the night of the accident, she testified that the victim wanted to go out for his birthday, so they went to a bar. Around 1:00 a.m., the victim wanted to "go to the next bar" and get "some other drugs[.]" She explained that he had an addiction to prescription pain medications and that she had been trying to get him to go into a treatment program. The Defendant testified that the victim normally drove when they went out but that she "ended up driving [because she] knew he was drinking[,]" and if she did not drive, "he would have left and done it anyway." According to the Defendant, while she was driving, a "car was coming and it was raining[.]" The Defendant testified, "[The victim] wouldn't put his seatbelt on. He never wore his seatbelt. When the car comes close it was [sic], and he reached out and grabbed my arm where I was holding the steering wheel and I remember getting off the road and I heard it and

felt it and I jerked back then I woke up."

On cross-examination, the Defendant admitted that she had smoked marijuana and used cocaine in the past. She further admitted that she became aware of the pending charges against her in November 2010 but did not turn herself in because her children were only "six and ten" years old at the time, and she "couldn't leave [her] kids." The Defendant also admitted that, when she was ultimately arrested in this case, she initially attempted to evade arrest. Additionally, she admitted to consuming alcohol again after the accident, albeit some months later.

The trial court considered the enhancement and mitigating factors and applied one enhancement factor: that the Defendant had a prior criminal conviction in addition to that necessary to establish the range. The trial court declined to apply any mitigating factors. In declining to apply one of the requested mitigating factors, that the Defendant acted under strong provocation because her husband was intoxicated and told her to drive, the trial court found that the Defendant had a "choice whether to get behind the wheel of the car while she was intoxicated and chose to exercise that option." The trial court also found that there were no substantial grounds that excused or justified her criminal conduct though failing to establish a defense and that, contrary to the Defendant's contention, her actions were not committed "under such unusual circumstances that it's unlikely she had a sustained intent to violate the law[.]" The trial court then sentenced the Defendant to serve nine years for the vehicular homicide conviction, finding that the sentence was warranted based on "all the factors" and "the circumstances of the crime[.]"

When considering the manner of service, the trial court stated that the accident reconstruction report noted that the accident occurred on a relatively straight stretch of road; the trial court found that this fact suggested that it was highly likely that the Defendant's intoxication, and not some vehicle defect, caused the accident. The trial court also found that the Defendant's following actions weighed in favor of incarceration: continuing to drink after the accident; failing to seek help after-the-fact for her drinking problem, on her own initiative; evading arrest and not turning herself in for over a year after the accident; having a prior conviction for DUI; and, even after causing the death of someone, continuing to drive. Based on the foregoing, the trial court denied all forms of alternative sentencing. The Defendant then appealed to this court.

ANALYSIS

The Defendant challenges (1) the length of her sentence, alleging that the trial court failed to consider some of the applicable mitigating factors and the sentencing practices

-3-

report; and (2) the trial court's denial of any form of alternative sentence, alleging that there were other, more suitable, alternatives to incarceration available. The State responds that the trial court's imposition of a nine-year sentence was proper because the trial court considered the purposes and principles of sentencing in determining the length of the Defendant's sentence, explicitly considered and rejected the proposed mitigating factors, and implicitly considered the sentencing practices report. Further, the State responds that the trial court properly exercised its discretion in denying alternative sentencing after concluding that "the offense and the Defendant's history and characteristics warranted a period of incarceration."

The Sentencing Reform Act was enacted in order "to promote justice" by ensuring that every defendant "be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102. In order to implement the purposes of the Sentencing Reform Act, trial courts must consider several sentencing principles. The sentence imposed for an offense "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4). Thus, before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b).

## I. Length of Sentence

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Bise, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the

sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

After considering the applicable law and the record, we conclude that the trial court's imposition of a nine-year sentence is presumptively reasonable. The record reflects that the Defendant admitted to consuming alcohol and then making the decision to drive. She also admitted that her decision to drive while intoxicated resulted in her losing control of her vehicle and, ultimately, Mr. Whitt's death. Further, we note that for the instant conviction, the Defendant faced a range of punishment between eight and twelve years. Despite the trial court's ability to sentence the Defendant anywhere within the range, it imposed a sentence at the lower end of the range, nine years. Given that the Defendant had a prior conviction for DUI, which the trial court considered for enhancement purposes, and that the record reflects that the trial court considered the purposes and principles of sentencing in determining the length of the Defendant's sentence, we conclude that the trial court's within-range sentence of nine years was proper.

## II. Alternative Sentencing

The Defendant was eligible for probation because the "sentence actually imposed upon [her was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a). Thus, the trial court was required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(b). However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant has the burden of establishing his or her suitability for full probation. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000).

A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Following the June 7, 2005 amendments to our Sentencing Act, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008). Further, Tennessee Code Annotated section 40-35-102(6) is only advisory. See Tenn. Code Ann. § 40-35-102(6)(D).

In determining any defendant's suitability for alternative sentencing, the trial court should consider whether

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4). On appeal, as previously noted, we review the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. See Caudle, 388 S.W.3d at 278-79.

In denying all forms of alternative sentencing, the trial court noted that the accident occurred on a relatively straight stretch of road and found that this fact suggested that it was highly likely that the Defendant's intoxication, and not some vehicle defect, caused the accident. The trial court explained that the Defendant's continuing to drink after the accident; failing to seek help after-the-fact for her drinking problem, on her own initiative; evading arrest and not turning herself in for over a year after the accident; having a prior conviction for DUI; and continuing to drive after causing the death of her husband, all supported a sentence of full incarceration. Although not explicitly stated in this portion of its findings, the trial court implicitly found that the Defendant's incarceration was necessary to avoid depreciating the seriousness of the offense and to deter the Defendant from continuing to drive while intoxicated. The trial court also found that the Defendant's drinking problem had not only negatively impacted her health but that it also negatively impacted her children because it affected her ability to transport them places because she would be too intoxicated to drive. This evinces a belief that incarceration would both serve the interests of the Defendant and society. Given the trial court's findings, the support for its findings in the record, and the applicable case law, we conclude that the trial court did not abuse its discretion in imposing a sentence of full incarceration.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE